UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA,**

vs.                                                        Case No.: 8:12-CR-150-T-24EAJ

**LUIS DULUC,**

        Defendant.
_____/

### DEFENDANT LUIS DULUC'S SENTENCING MEMORANDUM

COMES NOW, Defendant, **LUIS DULUC,** by and through his undersigned attorneys, and respectfully submits this Sentencing Memorandum, and would show:

**The Basics**

Mr. Duluc appears before this Court for sentencing, having entered pleas of guilty, pursuant to a Plea Agreement, to two counts of the Superseding Indictment: Count 1, charging him with conspiracy to commit healthcare fraud, contrary to Title 18, U.S.C., §1349, and Count 26, which charged him with making a false statement relating to healthcare matters, in violation of Title 18, U.S.C., §1035(a)(2). Count 1 carries a maximum term of imprisonment of ten years, while Count 26 has a maximum of five years, for a total maximum exposure of 15 years.[1]

---

[1] Mr. Duluc's co-Defendants have already been sentenced by the Court. Roberto Fernandez Gonzalez and Margarita Grishkoff both entered pleas to violations of Title 18, U.S.C., §1349 (attempt or conspiracy to commit healthcare fraud) and received sentences of 30 and 70 months respectively.

The parties agreed (page 7 of the Plea Agreement) that the calculated total offense level for these offenses, including all relevant conduct, would be level 40 and after a reduction of three levels for acceptance of responsibility, Mr. Duluc's total offense level would be 37. The final Presentence Investigation Report (page 12) agrees and with a criminal history category I, Mr. Duluc's guideline imprisonment range is 210 to 262 months. However, as noted in paragraph 99 of the Presentence Investigation Report, since the statutorily authorized maximum sentences are less than the minimum of the applicable guideline range, the guideline term of imprisonment is 180 months, which, in turn, would correspond to level 34 of the guidelines (151 - 188 months). See: §5G1.1; §5G1.2 and Application Note 3(B).

The Plea Agreement further impacts sentencing in two ways. First, the government agreed to consider Mr. Duluc's cooperation with them in determining whether to file a motion pursuant to §5K1.1 of the guidelines and Title 18, U.S.C., §3553(a) to reduce Mr. Duluc's sentence. Pursuant thereto, the government has filed such a motion and has recommended a reduction of two levels which would then place Mr. Duluc in level 32, criminal history category 1, 121 - 151 months.

Second, the parties agreed (page 8 of the Plea Agreement) that the Defendant would only ask for a sentence variance pursuant to Title 18, U.S.C., §3553(a) on the presentation of evidence and argument relating to his history and characteristics.

**Cooperation and Assistance**

As just noted above, Mr. Duluc has provided substantial assistance to the government which has led to the filing of a motion for the reduction of his sentence. Mr. Duluc will present a much more comprehensive review of his cooperation to the Court at the time of sentencing. Suffice it to say, the Defendant has attended numerous personal debriefing sessions with the government, has provided written materials to them, has provided information regarding individuals who have committed various criminal acts both within this district and outside, has provided sufficient information to allow the indictment and prosecution of another individual, and has provided the government with information regarding an active prosecution in the state of Texas. Based upon this level of cooperation, Mr. Duluc will suggest to the Court that the two levels (essentially a 20% reduction in sentence) argued for by the government is unnecessarily limited.[2]

---

[2] While the government may well argue that Mr. Duluc would also be eligible for a Rule 35 motion, this Court should take note of the fact that Rule 35 is not a substitute for a motion pursuant to §5K1.1. United States v. Mittelstadt, 969 F.2d 335 (7th Cir. 1992). To the extent the Defendant's cooperation has resulted in the filing of a §5K1.1 motion, this Court should not defer consideration of any additional reductions in his sentence to a later date, but rather should give Mr. Duluc full and complete credit at the present time. There is no guarantee that any future motion would ever be filed and, as such, Mr. Duluc would not receive credit for all of his assistance simply because the government applies a limited test to the nature of a cooperating individual's level of assistance.

## Mr. Duluc's Nature and Characteristics

Roughly 50% of all offenders have some prior record when appearing for sentencing.[3] Mr. Duluc presents as one of those individuals with no prior record and when one reads the various letters, both from family and friends, it is easy to understand his lack of previous criminal trouble.[4]

Mr. Duluc is 54 years old, has been married for more than 31 years to Loorna Duluc, and is the father to two grown children, Stephanie and Johan Duluc. Although born in Wisconsin, Mr. Duluc moved back to the Dominican Republic with his parents (both physicians) in 1972 and remained there, for schooling and some initial business enterprises, until 1988 when he moved to Tampa. Although the ensuing years were difficult financially for Mr. Duluc, he enrolled in Polk Community College (1994) and obtained an Associate's Degree and then furthered his education by obtaining a Bachelor's Degree from the University of South Florida - Lakeland and, thereafter, a Master's Degree from the College of William and Mary in 1997. Since that time, Mr. Duluc has been primarily involved in various healthcare enterprises.

---

[3] Nationally, 47.3% of offenders are in criminal history category I, while the figure for the Middle District of Florida is 54.9% and for the Eleventh Circuit as a whole, 57.1%. See: U.S. Sentencing Commission's Interactive Sourcebook (isb.ussc.gov) (fiscal year 2012).

[4] The letters are attached hereto as composite Exhibit "A".

The letters from his wife and children not only demonstrate Mr. Duluc to be a generous, kind, and optimistic man, but also one devoted to his family. Consider the words from Stephanie, his daughter:

> To describe Luis Maria Duluc in a letter is like trying to put all seven seas into one glass of water. . . . The words would flow so freely from my heart and soul because this particular man is my mentor, my passion, one of the reasons I get up and make everyday count, my hero.

A similar theme emerges from his son Johan's letter:

> Let me begin by saying this is the most difficult letter I have ever had to write. It is not difficult to find examples of character that I think represent my father, Luis Duluc, favorably. Rather, it is difficult to see my father in this situation to begin with and to know that his fate rests outside of his control.
>
> . . .
>
> My father is one the best men I know. From the time I can remember he has been educating me and guiding me in my journey from boyhood to manhood. It is surreal to see him in this position.
>
> . . .
>
> My father is the reason I believe in hard work, he is the example I carry with me into the world every day as I work to feed my family and live my life in exemplary fashion.

And finally, from his wife Loorna, with whom he has gone through the usual ups and downs present in a 31 year marriage, we learn:

> Your Honor, I could fill pages with stories of people my husband has helped. He's made a positive impact in all the lives he has touched. Up to this point he has led a life without a blemish - this is not a man that suddenly decided to change his convictions or his path to do harm. As a mother and wife I beg you for mercy. We all need him back.

A consistent history of Mr. Duluc emerges from these letters, one that shows a man not only deeply involved in raising his own children, but also one who cares for others. Examples of his willingness to help strangers and to teach his children to be positive contributing members of society are just two of the many positive attributes contained within these letters. However, it is not just his immediate family that sees Mr. Duluc in this fashion.

Within the letters in composite Exhibit "A" are several from his mother and father-in-law, sisters-in-law, and brother-in-law. They uniformly describe Mr. Duluc as a loving member of their family who has assisted and aided all of them at some point during their association. For Katia Gomez de Mieses, Mr. Duluc not only encouraged her to learn English so that her future would be presented with greater opportunities, but he also ensured her continuing education at a school in Connecticut when her parents encountered financial difficulties. From Mr. Duluc's brother-in-law Jaime Gomez, we learn:

> Luis is a caring person, of incredible solidarity, who spares no effort to help, not only the members of his family but anyone, who has encountered difficulties in life. He is a person of exquisite interpersonal skills, friendly and respectful of every human being without distinction of race, social status or religious orientation. Anyone in need, not only economic, finds him always willing to help, listen, advise, give a word of encouragement and even mourn, if that's what that person needs at any given time.

The same sentiments are expressed in the letter of his other sister-in-law, Karen Gomez, and perhaps in the toughest test of all in life, from his mother and father-in-law, Jesus Ruben Gomez and Daisy Almonte de Gomez. They write:

> Through the thirty years that Luis has been part of our family, we have come to realize he is a person who has a compassionate heart, who is not indifferent

> to the pain and the need for their peers, doing everything possible to reach out
> to help others without expecting anything in return.

The picture of generosity and helpfulness that Mr. Duluc's entire family paints is also a consistent theme from the letters of his friends that we have submitted.

For instance, Dr. Paul Sauvage was initially Luis' landlord in Seattle, Washington (for one of his businesses in that area) and after interacting with Mr. Duluc over a ten year period of time, Dr. Sauvage came to the following conclusion:

> . . . Luis Duluc is without a doubt the most straight forward and honest tenant
> I have ever dealt with. I have nothing but respect and admiration for the man.
> I wish all my tenants had half as much integrity, decency and sincerity as Luis.

As you might expect, Dr. Sauvage is not alone. Jeanne Neely writes about her history meeting Mr. Duluc in 2006 and how, "from that moment on, Luis became a mentor, an advisor, a sounding board and sometimes just a shoulder to cry on. He usually came to Rock Hill about once a year and would be there for the day. Even though we were a very small operation, Luis always treated us like we weren't. . . . Luis never asked for any type of compensation for his time or expenses. I truly believe it was always more important to him just to see our business grow and thrive. Most of all he just wanted Rock Hill Medserve to be successful."

Finally, it is important to note that while Mr. Duluc has accepted responsibility for his actions in this cause and while he is due to be properly sentenced therefor, not all of his business activities have been illegal. One of the letters we have provided is from Azmina Kanji who has been a business partner with Mr. Duluc in California. Her experience with

Mr. Duluc is the polar opposite of this case. That is to say, there has been no attempt to defraud Medicare or to engage in any type of fraudulent activity. Mr. Duluc has been, at all times, a positive contributor to their healthcare establishments.

## Summary

There is a clear disconnect between the Luis Duluc known to his family and friends as so passionately stated in the attached letters and the Defendant who presents himself for sentencing pursuant to the fraud convictions in this cause. It is almost impossible to reconcile the caring, generous, and honest man with the agreed upon facts in the subject Plea Agreement. Mr. Duluc has attempted, with his plea, to begin the process of righting the wrong. He has cooperated extensively and fully with the government and will continue to do so after sentencing. He has attempted to demonstrate to this Court his ability to comply with the legal constraints of society by being in full and complete satisfaction with all the conditions and terms of his pre-trial release, both prior to the plea and subsequent thereto. He has traveled far distances on numerous occasions without any incident and without any cause for concern. He has a life after prison planned in which he and his wife will continue to run her frozen yogurt enterprise in the Dominican Republic. As such, he will be no danger to the citizens of the United States nor is there any risk of a repeat offense of any type. While the government suggests an appropriate sentence of 12 years, we would ask the Court to impose a far lesser sentence in light of the totality of the circumstances of this case including the nature and extent of his substantial assistance to the government and his personal nature

and character as contained within the support letters we have submitted to the Court. Such a sentence would be sufficient but not greater than necessary to achieve a just result.

| | |
|---|---|
| */s/ Eric Kuske Leanza* | */s/ David T. Weisbrod* |
| ERIC KUSKE LEANZA, ESQ. | DAVID T. WEISBROD, ESQ. |
| 102 Whiting Street, Suite 501 | 412 East Madison Street, Suite 1111 |
| Tampa, Florida 33602 | Tampa, Florida 33602 |
| (813) 275-0901 / (813) 275-0902 (fax) | (813) 223-2792 / (813) 223-3124 (fax) |
| Counsel for Defendant | Co-Counsel for Defendant |
| Florida Bar No. 0110965 | Florida Bar No. 312487 |
| Email: erickuske@yahoo.com | Email: dweislaw@yahoo.com |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: CHRISTOPHER HUNTER, AUSA, United States Attorney's Office, 400 North Tampa Street, Suite 3200, Tampa, Florida 33602, this 25th day of November, 2014.

*/s/ David T. Weisbrod*
DAVID T. WEISBROD, ESQ.